Keturah Willdigg, as Administratrix, etc., of William Willdigg, Deceased, Respondent, v. The City of Brooklyn, Appellant, Impleaded with Another.— Judgment and order affirmed, with costs.—

DYKMAN, J.: While this is a border case, it is yet one in which different minds would reach diverse conclusions. The facts proven leave the case in some obscurity, but the legitimate inferences which a jury would be permitted to draw from the established facts are sufficient to sustain the verdict. The defendant Leucke, being the owner of premises fronting on Broadway in the city of Brooklyn, being desirous of improving the same, procured permission from the city of Brooklyn to make an excavation under the sidewalk in front of his lot for the purpose of constructing a vault. After the issuance of the permit, Leucke re- ·moved the sidewalk, made an excavation and erected over it a temporary bridge about three feet above the surface and covering the entire width thereof. The bridge was completed on the 18th day of September, 1892. There was testimony which tended to show that the floor of the bridge was loose in some places, and sprung under the feet of passengers; that there was no diagonal railing down the steps from the horizontal railing to the sidewalk, and that the railing on the sides was not strong. At the end of the platform where the deceased was found there was a step from the sidewalk composed of two large blocks about eight or ten inches high, and then there was a step about twenty inches high to the top of the platform. One witness said that there was a space of two inches between the ends of the board and the upper step and that those boards which ran lengthwise of the bridge gave under the weight of a person passing over them. The deceased man was about sixty-five years of age, healthy, sober and industrious. On the night of September 24, 1892, he left Beck's saloon a little after twelve o'clock at night, and was found about twelve-twenty or thirty at the end of the bridge nearest his home and furthest from Beck's. His body was lying parallel with the sidewalk, with his feet about eighteen inches from the foot of the platform and his head under some flagstones which had been piled up on the sidewalk a short distance from the platform. His skull was crushed and he was unconscious and remained so until he died, a few days thereafter. The hand rail on the outer or street side of the platform was broken, and a brace from the top of that rail to a cross plank was loose. This action is brought by the administratrix of the deceased against the city and Leucke, and the plaintiff had a verdict against both, and the defendant, the city of Brooklyn, has appealed from the judgment entered thereon. The duties and obligations of the landowner and of the city were plainly and correctly stated to the jury by the trial judge. The position of the deceased man when he was found is significant of much. He was at the end of the bridge nearest his home and furthest from Beck's saloon. From this, in connection with other estab-

lished facts, it may be assumed that he was on his way home. His feet were within eighteen inches of the first step, his head was driven under some flagstones and his skull was fractured. From that it may be inferred that he fell with great force from an elevated position, presumably from the bridge. Hence it may be inferred that he was crossing the bridge on his way home. If there was a space of two inches between the ends of the floor boards and the timber which constituted the upper step, and those boards sunk under the feet of persons crossing, it is easily seen that the fall of the deceased may have been caused in that way. Further, if the hand rail gave way and was broken, it may well be that the deceased man caught hold of the same when he stumbled; to save himself from a fall. All these circumstances, in connection with the testimony of the witness, have an important bearing both upon the question of the negligence of the defendants as well as the freedom therefrom of the deceased. In relation to the negligence of the city the case is reasonably plain. It had both actual and constructive notice of the defective condition of the bridge. The exceptions in the case present no errors and the judgment and order denying the motion for a new trial should be affirmed, with costs. Cullen, J., concurred; Brown, P. J., not sitting.